# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 18-1001V

```
* * * * * * * * * * * * * * * * * * * * * * * * *
                                                *
                                                *
MERILYNNE DELIO,                                *
                                                *
                                                *   Special Master Jennifer A. Shah
               Petitioner,                      *
                                                *
                                                *
v.                                              *   Filed: April 2, 2025
                                                *
SECRETARY OF HEALTH AND                         *
HUMAN SERVICES,                                 *
                                                *
                                                *
               Respondent.                      *
                                                *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

*Amy A. Senerth*, Muller Brazil, LLP, Dresher, PA, for Petitioner.
*Julia Collison*, U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION GRANTING IN PART
### PETITIONER'S MOTION FOR ATTORNEYS' FEES AND COSTS[1]

On July 12, 2018, Merilynne Delio ("Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq*.[2] (the "Vaccine Act" or "Program"), alleging that she developed a shoulder injury related to vaccine administration ("SIRVA") as a result of the influenza ("flu") vaccination she received on November 9, 2016. ECF No. 1. On December 20, 2021, former Special Master Katherine E. Oler issued a ruling finding that the onset of Petitioner's shoulder pain was "sometime between December 14, 2016, and January of 2017." ECF No. 55 ("Onset Ruling"), *Delio v. Sec'y of Health & Hum. Servs.*,

---

[1] Because this Decision contains a reasoned explanation for the action in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

1

2021 WL 7081332 (Fed. Cl. Spec. Mstr. Dec. 20, 2021).  On March 29, 2024, Special Master Oler issued a decision dismissing the petition ("Dismissal Decision").  ECF No. 73, *Delio v. Sec'y of Health & Hum. Servs.*, No. 18-1001V, 2024 WL 1917927 (Fed. Cl. Spec. Mstr. Mar. 29, 2024).

On August 28, 2024, Petitioner filed a motion for attorneys' fees and costs seeking $62,514.65, consisting of $46,111.40 in attorneys' fees and $16,403.25 in attorneys' costs ("Fees App.").  ECF No. 77.  Petitioner affirmed she did not incur any personal costs.  Fees App. at 2.  The same day, this case was reassigned to my docket.  ECF No. 78.  On September 10, 2024, Respondent filed a response arguing that Petitioner lost a reasonable basis for her claim after the Onset Ruling and should be denied fees and costs incurred after that ruling was issued ("Fees Response").  ECF No. 79.  On September 18, 2024, Petitioner filed a reply asserting that she had a reasonable basis for her claim at all times ("Fees Reply").  ECF No. 80.

For the reasons discussed below, I find that Petitioner's claim maintained a reasonable basis throughout the litigation, but I conclude that a deduction to the amount claimed is warranted.  Accordingly, I **GRANT IN PART** Petitioner's motion and award her a total of **$61,514.65** in attorneys' fees and costs.

## I. PROCEDURAL HISTORY

A detailed procedural history was included in the Dismissal Decision and is incorporated herein by reference.  I summarize the procedural history relevant to the analysis of reasonable basis below.

Petitioner filed her petition on July 12, 2018, alleging her injury satisfied the Table criteria for SIRVA.  Pet. at 1.

Respondent filed his Rule 4(c) Report on June 17, 2019 ("Report").  ECF No. 21.  He argued the case was not appropriate for compensation because the medical records did not show the onset of Petitioner's shoulder pain occurred within 48 hours of vaccination, and because she had other conditions that might have caused her shoulder symptoms.  Report at 7-8.  He also argued Petitioner had failed to prove the vaccination caused-in-fact a shoulder injury.  *Id.* at 8-9.

This case was reassigned to former Special Master Katherine E. Oler on July 23, 2019.  ECF No. 25.  Special Master Oler held a status conference on September 25, 2019, and advised the parties that she "viewed onset of shoulder pain to be around December 2016, after the December 14, 2016 medical visit at which Petitioner denied any shoulder pain."  Scheduling Order dated Sept. 26, 2019, ECF No. 29.  Special Master Oler granted Petitioner's request to seek an expert opinion, informing counsel that "any expert opinion should consider my views regarding onset."  *Id.*  She "directed counsel to share this Order with experts willing to opine in this matter."  *Id.*

On November 25, 2019, Petitioner filed an expert report from Naveed Natanzi, D.O.  Ex. 13.  Dr. Natanzi began his analysis by stating that Petitioner "presented with right shoulder pain that began *immediately* after an influenza vaccination in her right arm on 11/9/16."  *Id.* at 7 (emphasis added).  Because this was inconsistent with her views on onset expressed during the September 25, 2019 conference, Special Master Oler issued an order on November 26, 2019,

2

requesting that Dr. Natanzi file a supplemental report responding to the following question: "Assuming shoulder pain began sometime in December 2016 (after December 14, 2016), do you believe Petitioner's flu shot caused her pain?  Please explain your answer."  Scheduling Order dated Nov. 26, 2019, ECF No. 29.

Petitioner filed a brief supplemental report from Dr. Natanzi on January 28, 2020.  Ex. 15.  He stated: "If I were to assume that Ms. Delio's right shoulder pain began sometime after 12/14/16 it would make a SIRVA injury much less likely."  *Id.* at 1.  But he reiterated his position that Petitioner's shoulder pain likely started immediately after the vaccination.  *Id.*  He based his opinion on Petitioner's affidavit, in which she recounted an immediate, intense pain post-vaccination.  *Id.*  She explained that she did not report the pain during two subsequent medical appointments because she had been advised the pain was related to her recent surgery in the same arm.  *Id.*  Dr. Natanzi further opined that there was no alternative etiology for Petitioner's shoulder pain, and it did not make sense that she would spontaneously develop shoulder pain in the month after vaccination.  *Id.*

On October 2, 2020, Respondent filed an expert report from Geoffrey Abrams, M.D.  Ex. A.  Dr. Abrams believed that Petitioner's shoulder pain started in January 2017, two months post-vaccination.  *Id.* at 6.  He discussed a number of conditions and events in Petitioner's history that could have caused her shoulder pain other than the vaccination.  *Id.* at 7-9.

On October 27, 2020, Petitioner filed a third expert report from Dr. Natanzi maintaining his opinions about onset and causation.  Ex. 18.

Special Master Oler held a status conference on April 1, 2021, in which she raised the possibility of ruling on the record on the issue of onset.  *See* Scheduling Order dated April 1, 2021, ECF No. 44.  On April 13, 2021, Petitioner filed several affidavits, along with a status report indicating that she was amenable to an onset determination on the existing record.  Exs. 19-21; ECF No. 46.

The parties briefed the onset issue.  On December 20, 2021, Special Master Oler ruled that onset occurred between December 14, 2016, and January of 2017.  *Delio*, 2021 WL 7081332, at *1.  She gave Petitioner until January 20, 2022, to file a status report indicating how she intended to proceed based on the facts as determined by her ruling.  *Id.* at *7.

In her status report, Petitioner stated that she intended to file a supplemental expert report.  ECF No. 56.  Special Master Oler conducted a status conference on January 25, 2022, during which she asked Petitioner's counsel what an additional report from Dr. Natanzi would add, given his previous declaration that an onset date of December 14, 2016, "would make a SIRVA injury much less likely."  Ex. 15 at 1; *see also* Scheduling Order dated Jan. 25, 2022, ECF No. 57.  Petitioner's counsel indicated that an additional expert report would help clarify Dr. Natanzi's opinion.  Scheduling Order dated Jan. 25, 2022, ECF No. 57.  Special Master Oler gave Petitioner until February 24, 2022, to file a supplemental expert report.  *Id.* at 2.

In Dr. Natanzi's fourth report, he opined that, although in general the onset of pain more than one month after vaccination would make a SIRVA injury "much less likely," "this case is an

3

exception." Ex. 22-1 at 2.  Two patients in a Spanish case series experienced the onset of bursitis within two months of vaccination.  *Id.*; *see* Arias et al., *Risk of bursitis and other injuries and dysfunctions of the shoulder,* VACCINE 35 (2017) 4870–4876 (Ex. 14J) ("Arias").  Also, Petitioner was taking pain medications following her recent elbow surgery, which might have masked her initial perception of shoulder pain.  *Id.*  Dr. Natanzi concluded that "given the lack of any alternative injury, the temporal relationship based on the unique facts and circumstances to this case, and the pathognomic objective signs of a shoulder immune-mediated injury, it is my opinion that Petitioner suffered a right shoulder injury as a result of the flu shot administered on November 9, 2016."  *Id.* at 2-3.

On June 22, 2022, Special Master Oler held a status conference to introduce an article by Hesse et al. into the record as Court Exhibit 1001.  Scheduling Order dated June 22, 2022, ECF No. 64; Hesse et al., *Risk for Subdeltoid Bursitis After Influenza Vaccination: A Population-Based Cohort Study*, 173 ANNALS OF INTERNAL MEDICINE 4, 253-61 (2020) (hereinafter "Hesse").  She gave the parties 30 days to indicate whether they intended to file a response to this paper.  *Id.*  Neither party elected to do so.  ECF Nos. 66, 68.

The parties filed briefs on the record concerning entitlement.  ECF Nos. 70, 71.  They affirmed the record was complete on April 27, 2023.  ECF No. 72.  Special Master Oler issued the Dismissal Decision on March 29, 2024.  *Delio v. Sec'y of Health & Hum. Servs.*, No. 18-1001V, 2024 WL 1917927 (Fed. Cl. Spec. Mstr. Mar. 29, 2024).  She concluded that Petitioner had failed to satisfy the third prong of *Althen* based on the date of onset, stating that Petitioner had "presented no persuasive evidence which suggests a shoulder injury caused by vaccination can develop this long after vaccination."  *Id.* at *13; *see also Althen v. Sec'y of Health & Hum. Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005).  She also concluded *Althen* prong one was not proven.  2024 WL 1917927, at *15-16.

## II.   **FACTUAL BACKGROUND**

The Dismissal Decision included a detailed medical history, and I incorporate it herein.  *Delio*, 2024 WL 1917927, at *3-4.  Relevant here, Petitioner had a cervical fusion in 2003 and a right rotator cuff surgery in 2001.  Ex. 4 at 1.  On October 21, 2016, she saw orthopedist Thomas Hansen, M.D., complaining of "right elbow pain that began around January 2016."  *Id.*  Dr. Hansen assessed right lateral epicondylitis and carpal tunnel syndrome; he recommended a right lateral epicondyle debridement and carpal tunnel release.  *Id*. at 2.  Petitioner underwent these procedures on November 1, 2016.  *Id*. at 31-32.

Eight days later, on November 9, 2016, Petitioner received a flu vaccine in her right deltoid.  Ex. 1 at 1.  On November 14, 2016, Petitioner visited Dr. Hansen for a postoperative follow-up.  Ex. 4 at 3.  She reported slightly limited range of motion ("ROM") in the elbow but denied having "numbness, swelling, or trouble sleeping secondary to pain."  *Id.*  She denied experiencing shoulder pain.  *Id.*  Her sutures were removed during this visit.  *Id.* at 4.

Petitioner visited Dr. Hansen on December 14, 2016, for a six-week postoperative exam.  Ex. 4 at 5.  She reported that her pain had increased lately.  *Id.*  She described pain in her right hand that was "'burning,' 'sensitive,' and an intermittent feeling of an electric current throughout her hand." *Id.*  She also described her right elbow pain as "squeezing."  *Id.*  She had trouble sleeping

4

due to pain. *Id.* She denied numbness, swelling, or limited ROM. *Id.* She again affirmatively denied having shoulder pain. *Id.*

On January 10, 2017, Petitioner presented to Avondale Family Care for fever and body aches. Ex. 2 at 29. She tested positive for the flu and was given Tamiflu. *Id.* She denied experiencing muscle aches, painful or swollen joints, weakness, or loss of strength. *Id.* at 30-31.

Petitioner returned to Avondale Family Care on February 8, 2017, for a diabetes follow-up appointment. Ex. 2 at 25. She reported she was "having [right] shoulder pain now" and that she was "still healing from [her elbow surgery]." *Id.* She received a cortisone injection in her right shoulder. *Id.* at 27.

On April 8, 2017, Petitioner had an MRI of her right shoulder. Ex. 4 at 36. The history stated: "Pain for 4 months. Throbbing pain. Keeps her up at night. No known trauma. Previous rotator cuff surgery of the right shoulder." *Id.* The impression included "findings highly suspicious for chronic calcific tendinitis of the right shoulder involving the supraspinatus tendon"; "there is a questionable tiny partial-thickness articular surface tear of supraspinatus tendon"; "mild subacromial-subdeltoid bursitis"; and prior acromioplasty with partial resection of the distal clavicle. *Id.*

On May 10, 2017, Petitioner presented to Dr. Hansen with complaints of right shoulder pain. Ex. 4 at 7. The history noted that "the patient complains of right shoulder pain has been present since January of 2017 and is not the result of any accident, injury, or trauma." *Id.* Petitioner described her pain as "dull, with intermittent sharpness, burning, stabbing, throbbing pain." *Id.* Dr. Hansen assessed bursitis. *Id.* at 8.

Petitioner returned to Dr. Hansen on December 27, 2017. Ex. 4 at 9. She complained of pain in her right shoulder and requested a cortisone injection. *Id.* This time, she said her pain had been present since "approximately November of 2016." *Id.* Her pain was not the result of any accident, injury, or trauma. *Id.* She also described having left elbow and left forearm pain since May of 2017. *Id.* She had positive impingement signs, full ROM, and some tenderness over the acromioclavicular joint. *Id.* at 10. Dr. Hansen again assessed bursitis and administered a cortisone injection in the right shoulder. *Id.*

On January 18, 2018, Petitioner had a physical therapy ("PT") evaluation for right shoulder pain and left medial elbow pain. Ex. 4 at 54. She said "she [received] a flu shot in her right arm on November 8, 2016 that caused her increased shoulder pain. . . . Since [the] flu shot, her pain has gotten worse. She waited to see if her pain would improve but it did not." *Id.* On February 5, 2018, Petitioner was discharged from PT because she did not return for her scheduled appointments. *Id.* at 52.

### III.   LEGAL STANDARDS FOR AN AWARD OF FEES AND COSTS

Section 15(e) (1) of the Vaccine Act permits a special master to award "reasonable attorneys' fees, and other costs." § 300aa-15(e)(1)(A)-(B). Petitioners are entitled to an award of reasonable attorneys' fees and costs if they are entitled to compensation under the Vaccine Act, or even if they are unsuccessful, they are eligible for such an award so long as the special master

5

finds that the petition was filed in good faith and with a reasonable basis. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008).

### A. Good Faith

The good faith requirement is a "subjective standard that focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.*, 36 Fed. Cl. 114, 121 (1996).

### B. Reasonable Basis

Unlike the good-faith inquiry, an analysis of reasonable basis requires more than just a petitioner's belief in her claim. *Turner*, 2007 WL 4410030, at *6-7 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Instead, the claim must be supported by objective evidence. *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017).

"[I]n deciding reasonable basis the Special Master needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Hum. Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Spec. Mstr. Jan. 5, 2018). Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis…." *Chuisano v. United States,* 116 Fed. Cl. 276, 286 (2014). For example, a petition that relies only on temporal proximity and a petitioner's affidavit would not have a reasonable basis. *Id.* at 286; *see also Turpin v. Sec'y Health & Hum. Servs.*, No. 99-564V, 2005 WL 1026714, at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Hum. Servs.*, No. 99-539V, 2005 WL 1026713, at *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney).

While the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano*, 116 Fed. Cl. at 286. The Federal Circuit has held that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1346 (Fed. Cir. 2020) (finding Petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert); *see also James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021) (finding that "the lack of an express medical opinion on causation did not by itself negate the claim's reasonable basis.").

When determining if a reasonable basis exists, a special master may consider a myriad of factors, including "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of*

6

*Health & Hum. Servs.*, No. 17-36V, 138 Fed. Cl. 282, 289 (2018). This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Hum. Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

The Vaccine Act requires petitioners to provide objective evidence of five elements to make out a *prima facie* case for compensation:

1. The Petitioner received a vaccine set forth in the Vaccine Injury Table;

2. The Petitioner received a vaccine in the United States or outside of the United States under some special circumstances;

3. The Petitioner's injuries or death were caused by the vaccine (either by showing that the injury was one listed on the Vaccine Injury Table, or by making out a *prima facie* case of causation-in-fact), or the vaccine significantly aggravated a pre-existing injury;

4. The Petitioner experienced the residual effects of the injury for more than six months, died, or required an in-patient hospitalization with surgical intervention; and

5. The Petitioner has not previously collected an award or settlement of a civil action for damages for such vaccine-related injury or death.

42 U.S.C. § 300aa-11(c)(1)(A)-(E). In order to establish reasonable basis, a Petitioner must present more than a scintilla of objective evidence satisfying each of these elements. *Cottingham*, 971 F.3d at 1344, 1345-46.

Finally, a case must maintain a reasonable basis at all times. A special master can, in his or her discretion, deny fees and costs incurred after a point in the litigation at which the petitioner is determined to have lost the reasonable basis for her claim. *See, e.g., R.K. v. Sec'y of Health & Hum. Servs.*, 760 F. App'x 1010, 1013 (Fed. Cir. 2019) (affirming the denial of fees incurred during an appeal to the Federal Circuit because the case lost reasonable basis after denial of the motion for review); *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1376 (Fed. Cir. 1994) (declining to award fees and costs after the case lost reasonable basis); *Frantz v. Sec'y of Health & Hum. Servs.*, No. 13-158V, 2019 WL 3713942, at *15 (Fed. Cl. Spec. Mstr. June 24, 2019) (denying fees after reasonable basis was lost); *Swick v. Sec'y of Health & Hum. Servs.*, No. 13-256V, 2018 WL 6009290, at *6 (Fed. Cl. Spec. Mstr. Oct. 22, 2018) (same).

### IV.    THE PARTIES' ARGUMENTS

In her fee application, Petitioner does not address good faith or reasonable basis. *See generally* Fees App. In his response, Respondent asserts a partial objection, arguing that Petitioner lost a reasonable basis for her claim on December 20, 2021, after the Onset Ruling was issued. Fees Resp. at 1. From that time, it was "clear that petitioner was unable to support her Table SIRVA claim or a cause-in-fact claim for her shoulder injury, given the timing of the onset of her injury." *Id.* at 10. Furthermore, "petitioner's counsel should have been aware that there was no

7

objective support for the claims made in the petition based on the ruling from the Court and the statement from her own expert." *Id.* Respondent requests that any fees and costs incurred after December 21, 2021 be denied. *Id.* at 11. Aside from this general objection, Respondent does not dispute any specific charges for fees or costs and leaves the amount of an award, if any, to my discretion. *Id.*

Petitioner argues in reply that the Onset Ruling did not obviate the reasonable basis for her causation-in-fact claim. Fees Reply at 3. As Dr. Natanzi pointed out, Petitioner's medical history was complicated by having recent right elbow and wrist surgery and taking postoperative pain medications, which delayed the recognition of her post-vaccination right shoulder pain. *Id.* at 4-5. Also, while Dr. Natanzi acknowledged that a December 14, 2016 onset of shoulder pain made a "SIRVA" injury less likely, this was based solely on the regulatory definition of "SIRVA." *Id.* at 5.

Petitioner also argues that, although she filed a motion for a ruling on the record on both onset and entitlement, Special Master Oler only ruled on onset, leaving open the possibility that Petitioner could prevail on entitlement based on a causation-in-fact theory. Fees Reply at 5. Special Master Oler's choice to forego making an entitlement ruling along with the Onset Ruling shows that the claim continued to have reasonable basis throughout the litigation. *Id.* at 6.

## V.   ANALYSIS OF GOOD FAITH AND REASONABLE BASIS

### A.  Good Faith

Respondent does not challenge Petitioner's good faith in this case. *See generally* Fees Resp. I find that the record does not contain evidence of bad faith, and thus Petitioner is entitled to the presumption of good faith under *Grice*. 36 Fed. Cl. at 121.

### B.  Reasonable Basis

Respondent argues that reasonable basis was lost after Special Master Oler's Onset Ruling. *See generally* Fees Resp. Special Master Oler's ruling that the onset of Petitioner's shoulder pain was more than 35 days after her November 9, 2016 flu vaccination, did effectively eliminate Petitioner's Table SIRVA claim. But as Petitioner points out, after the Onset Ruling was issued, Special Master Oler allowed her to file a fourth report from Dr. Natanzi, along with new literature. Fees Reply at 5. Thus, Special Master Oler did not reject outright the possibility that a causation-in-fact claim could prevail.

In his report following the Onset Ruling, Dr. Natanzi explained why an onset date of December 14, 2016, could still be consistent with a shoulder injury caused-in-fact by the subject vaccination. He stated that, although a "SIRVA" injury would be unlikely in a case where the onset of pain was more than 35 days post-vaccination, "this case is an exception." Ex. 22-1 at 2. He cited the Arias case series on vaccination-associated shoulder injuries, which reported two individuals who experienced shoulder pain within two months of vaccination and, like Petitioner, were diagnosed with bursitis. *Id.*; Arias at 4871 (Table 1). This paper, according to Dr. Natanzi, showed that a vaccine-caused shoulder injury similar to Petitioner's can manifest up to two months after vaccination.

Dr. Natanzi also argued that there were special circumstances in this case that might have delayed Petitioner's recognition of her right shoulder pain. Petitioner was on pain medications after her November 1, 2016 right lateral epicondyle debridement and carpal tunnel release procedures. Ex. 22-1 at 2. On November 14, 2016, the day of Petitioner's allegedly casual vaccination, she was taking Cymbalta and Aleve for her postoperative pain, along with her other medications. Ex. 4 at 3-4. On December 16, 2016, during another postoperative appointment, she was still taking Cymbalta and Aleve and was also prescribed tramadol. Ex. 4 at 6. These pain medications, according to Dr. Natanzi, likely masked her right shoulder pain for some time and made her condition more difficult to interpret. Ex. 22-1 at 2.

Ultimately, Special Master Oler considered Dr. Natanzi's opinion, along with the Arias and Hesse papers, and concluded that Petitioner had failed to prove a cause-in-fact shoulder injury claim. *Delio*, 2024 WL 1917927, at \*13-16. She characterized the evidence submitted by Dr. Natanzi as "quite weak" and concluded it did "not amount to preponderant evidence in support of *Althen* prong three." *Id.* at \*15. Nonetheless, it is clear that the evidence presented by Petitioner after the Onset Ruling was sufficient to maintain a reasonable basis for the cause-in-fact claim. Petitioner supplied a reasoned opinion and literature from an expert whose qualifications were not disputed, which took into consideration Special Master Oler's findings regarding onset. Special Master Oler considered that evidence in rendering the Dismissal Decision.

Lastly, although other special masters' decisions are not binding on me, I note that this case is distinct from those in which reasonable basis was deemed "lost" during the course of litigation. In *Frantz*, for example, the special master concluded that the petitioner lost reasonable basis after an expert's fourth report, which was "speculation and expert speculation is the antithesis of reasonable basis." *Frantz*, 2019 WL 3713942, at \*15. The report assumed incorrect facts and "contributed so little" to the petitioner's case that it was essentially frivolous. *Id.* Likewise, in *Swick*, the special master found that the petitioners lost reasonable basis when a fact-finding was issued rejecting the basis for their expert's opinion, but the expert failed to change his opinion in response to the ruling. *Swick*, 2018 WL 6009290, at \*5-6. Also, in *Swick*, Respondent objected to the expert's qualifications for opining on the issues in the case. *Id.* Here, by contrast, Dr. Natanzi's fourth report did include new information and bases for his opinion in response to the Onset Ruling, as discussed above. His qualifications were not challenged. Although the opinions and data presented by Dr. Natanzi were not credited, they met the Federal Circuit's low bar of providing more than a scintilla of evidence supporting Petitioner's causation-in-fact theory.

As such, I conclude that Petitioner's claim maintained a reasonable basis throughout the course of the litigation, and she is entitled to compensation for fees and costs incurred during the case's full course.

## VI.     REASONABLE ATTORNEYS' FEES AND COSTS

It is "well within the special master's discretion" to determine the reasonableness of fees. *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521-22 (Fed. Cir. 1993); *see also Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991) ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs.").

9

Applications for attorneys' fees must include contemporaneous and specific billing records that indicate the work performed and the number of hours spent on said work. *See Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 316-18 (2008).

Reasonable hourly rates are determined by looking at the "prevailing market rate" in the relevant community. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984). The "prevailing market rate" is akin to the rate "in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 895, n.11. The petitioner bears the burden of providing adequate evidence to prove that the requested hourly rate is reasonable. *Id.*

### A. Attorneys' Fees

Petitioner bears the burden of establishing that the rates charged, hours expended, and costs incurred are reasonable. *Wasson v. Sec'y of Health & Hum. Servs.*, 24 Cl. Ct. 482, 484 (1993). Here, she requests a total of $46,111.40 in attorneys' fees. Fees App. at 2. Aside from his general reasonable basis argument, Respondent has not articulated any specific objections to the fees requested. *See* Fees Resp. at 11.

1. Reasonable Hourly Rates

The reasonable hourly rate is generally based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349). *McCulloch* provides the framework for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years based on it.[3]

Petitioner requests compensation for Ms. Senerth and the other attorneys who worked on this case at the following rates: for Ms. Senerth, $225.00 per hour for work performed in 2017, $233.00 per hour for work performed in 2018, $250.00 per hour for work performed in 2019, $275.00 per hour for work performed in 2020, $300.00 per hour for work performed in 2021, $325.00 per hour for work performed in 2022, $375.00 per hour for work performed in 2023, and $400.00 per hour for work performed in 2024; for Mr. Paul Brazil, $400.00 per hour for work performed in 2022; and for Mr. Max Muller, $450.00 per hour for work performed in 2024. Fees App. at 1. Petitioner also requests compensation for the Muller Brazil paralegals, at hourly rates ranging from $125.00 to $177.00, for work performed between 2017 and 2024. *Id.* at 2.

These rates are consistent with what Ms. Senerth and the Muller Brazil firm have previously been awarded for their Vaccine Program work. *See*, *e.g.*, *Madan v. Sec'y of Health &*

---

[3] The 2015-2025 Fee Schedules can be accessed at: https://www.uscfc.uscourts.gov/osm-attorneys-forum-hourly-rate-fee-schedules. The hourly rates contained within the schedules are updated from the decision in *McCulloch*, 2015 WL 5634323.

10

*Hum. Servs.*, No. 19-537V, 2024 WL 4043854 (Fed. Cl. Spec. Mstr. May 10, 2024); *McConnell v. Sec'y of Health & Hum. Servs.*, No. 18-1051V, 2024 WL 1617309 (Fed. Cl. Spec. Mstr. Feb. 1, 2024); *Wirtz v. Sec'y of Health & Hum. Servs.*, No. 20-1103V, 2024 WL 966815 (Fed. Cl. Spec. Mstr. Jan. 25, 2024); *Ivanovski v. Sec'y of Health & Hum. Servs.*, No. 19-1690V, 2023 WL 120776 (Fed. Cl. Spec. Mstr. Jan. 6, 2023). Accordingly, I find the requested rates to be reasonable and that no adjustment is warranted.

2. Reasonable Hours Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton,* 3 F.3d at 1522 (Fed. Cir. 1993). The reduction may be made *sua sponte*, independent of enumerated objections from the respondent. *Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 208-09 (2009); *Savin*, 85 Fed. Cl. at 318.

A special master may look to his or her experience and judgment to reduce an award of fees and costs to a level reasonable for the work performed. *Saxton*, 3 F.3d at 1521. The special master need not engage in a line-by-line analysis of the fee application. *Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 729 (2011). Instead, the special master may make a global reduction to the total amount of fees requested. *See Hines*, 22 Cl. Ct. 750, 753 (1991) ("special masters have wide latitude in determining the reasonableness of both attorneys' fees and costs"); *Hocraffer v. Sec'y of Health & Hum. Servs.*, No. 99-533V, 2011 WL 3705153 (Fed. Cl. Spec. Mstr. July 25, 2011), *mot. for rev. denied*, 2011 WL 6292218 (Fed. Cl. 2011).

a. Administrative and Clerical Tasks

While attorneys may be compensated for non-attorney-level work, the rate charged must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Hum. Servs.*, No. 08–243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Furthermore, clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26; *Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989).

The overall hours spent on this matter appear to be largely reasonable. However, multiple entries in the submitted billing records are for clerical or administrative tasks. For instance, there are entries for preparing exhibits for filing, preparing notices of filing, filing documents in CM/ECF, and reviewing ECF notifications, totaling approximately 10 hours of work. *See generally* Fees App., Ex. A. Although these tasks were mostly completed by paralegals, some attorney time was also billed. Because the tasks occurred over a number of years and were done by various personnel at the Muller Brazil firm, I will apply a flat $1,000.00 deduction from the requested attorneys' fees for these erroneous charges.

Accordingly, Petitioner is awarded final attorneys' fees in the amount of **$45,111.40**.

### B. Attorneys' Costs

Petitioner requests a total of $16,403.25 in attorneys' costs. Specifically, Petitioner requests $708.40 for obtaining medical records; $400.00 for the Court's filing fee; $6.85 for mailing costs, and $15,288.00 for Dr. Natanzi's expert costs. Fees App. at 2; *see also* Fees App., Ex. B. Documentation for all medical record requests and the Court's filing fee was provided, and these costs will be paid in full. Petitioner did not provide a receipt for "certified postage," but because these costs are typically required in litigation and because the total claim is reasonable, this will be awarded in full as well.

####   1. Expert Costs for Naveed Natanzi, D.O.

Petitioner requests a total of $15,288.00 for Dr. Natanzi's work in this case. Dr. Natanzi wrote four reports and expended 29.4 hours on those reports and on his review of Petitioner's medical records, review of pertinent medical literature, and discussions with Ms. Senerth. *See* Fees App., Ex. B at 10. Dr. Natanzi was previously awarded his requested hourly rate of $520.00. *See, e.g.*, *Edwards v. Sec'y of Health & Hum. Servs.*, No. 20-612V, 2024 WL 1740483, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 2024). I find Dr. Natanzi's hourly rate, and the overall time expended by Dr. Natanzi on this case, to be reasonable.

Total attorneys' costs to be awarded: **$16,403.25**.

### VII.   CONCLUSION

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of final fee and cost awards, and based on the foregoing, I **GRANT IN PART** Petitioner's application, as follows:

A lump sum in the amount of **$61,514.65**, representing reimbursement for attorneys' fees and costs, to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this decision.[4]

**IT IS SO ORDERED.**

**s/ Jennifer A. Shah**
Jennifer A. Shah
Special Master

---

[4] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review. Vaccine Rule 11(a).